UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

ERIC, S-S.,                                                            Case No. 3:24-cv-01394-AR

                Plaintiff,                    **OPINION AND ORDER**

    v.

COMMISSIONER SOCIAL SECURITY,

                Defendant.

_____

**ARMISTEAD, United States Magistrate Judge**

      In this judicial review of the Commissioner's final decision denying Social Security

benefits, Eric S-S. (last name omitted for privacy) challenges the Administrative Law Judge's

findings regarding the medical opinion evidence and his subjective symptom testimony. (Pl.'s Br.

at 1-2.) As explained below, the Commissioner's decision is affirmed.[1]

---

[1]    This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3), and the parties
have consented to jurisdiction by magistrate judge under Federal Rule of Civil Procedure 73 and
28 U.S.C. § 636(c).

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges disability based on major depressive disorder with anxious distress, lumbosacral strain with IVDS, plantar fasciitis of the right foot, right knee patellofemoral pain syndrome, femoral radiculopathy left lower extremity, and right hip tendonitis. (Tr. 250.) Plaintiff's impairments interfere with his ability to walk, stand, and sit, and cause sleep disturbances. (Tr. 39.)

On March 18, 2021, plaintiff applied for Title II benefits alleging disability beginning April 26, 2019. (Tr. 247.) His application was denied initially and on reconsideration. Plaintiff appeared at a hearing before ALJ Linda Thomasson, on March 22, 2024. (Tr. 31.) The ALJ issued an unfavorable decision on April 26, 2024. (Tr. 12-30.) The Appeals Council denied plaintiff's request for review and plaintiff appealed. (Tr. 1-6.)

## ALJ'S DECISION

In denying plaintiff's application for DIB, the ALJ followed the five-step sequential evaluation process.[2] At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity (SGA) during the period from his alleged onset date of April 26, 2019, through his date last insured of September 30, 2023. (Tr. 17.) At step two, the ALJ determined that plaintiff had the following severe impairments: depression, anxiety, left shoulder disorder, spine disorder, hip disorder, and right knee disorder. (Tr. 17.) At step three, the ALJ determined that

---

[2]    To determine a claimant's disability, the ALJ must apply a five-step evaluation. *See* 20 C.F.R. § 404.1520(a)(4). If the ALJ finds that a claimant is either disabled or not disabled at any step, the ALJ does not continue to the next step. *Id.*; *see also Parra v. Astrue*, 481 F.3d 742, 746-47 (9th Cir. 2007) (discussing the five-step evaluation in detail).

plaintiff's impairments, singly or in combination, did not meet or medically equal the severity of any listed impairment. (Tr. 18.)

As for the ALJ's assessment of plaintiff's residual functional capacity (RFC), 20 C.F.R. § 404.1545, the ALJ determined that plaintiff has the ability to perform light work with these limitations: he can occasionally climb ladders, ropes, scaffolds, stairs, and ramps, and he can occasionally balance, stoop, kneel, crouch and crawl. He can frequently reach with the left, non-dominant upper extremity. He is limited to occasional public interaction. (Tr. 19.) At step four, the ALJ determined that plaintiff cannot perform any past relevant work. (Tr. 23.) Considering his RFC, the ALJ found at step five that jobs exist in significant numbers in the national economy that plaintiff can perform, including the representative occupations of routing clerk, marker, and production assembler. (Tr. 24.) Thus, the ALJ concluded that plaintiff has not been under a disability within the meaning of the Act. (Tr. 25.)

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quotation and citation omitted). To determine whether substantial evidence exists, the court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

**DISCUSSION**

A.    *Medical Opinion Evidence*

Plaintiff challenges the ALJ's consideration of the medical opinions of Jessica Bentura-Jimenez, a psychiatric mental health nurse practitioner; and Sarah Borquist and Sarah Macember, both physical therapists. (Pl.'s Op. Br. at 1.) The regulations require ALJs to evaluate the supportability and consistency of a medical opinion when assessing its persuasiveness. 20 C.F.R. § 404.1520c. ALJs must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(b)(2)). Supportability is determined by assessing whether the medical source provides explanations and objective medical evidence to support their opinion. 20 C.F.R. § 404.1520c(c)(1). Consistency is determined by evaluating how consistent the opinion is with evidence from other medical and nonmedical sources in the record. 20 C.F.R. § 404.1520c(c)(2).

1.    **Jessica Bentura-Jimenez**

At the agency's request, Bentura-Jimenez conducted a psychiatric consultative examination of plaintiff. (Tr. 1010-16.) The ALJ found Bentura-Jimenez's opinion partially persuasive, noting her findings about plaintiff's social interactions and adaptation to usual stresses in the workplace were inconsistent with records showing "unremarkable exams and conservative treatment." (Tr. 22.) The ALJ's conclusions are supported by substantial evidence.

Bentura-Jimenez opined that plaintiff is "not able to interact with coworkers and superiors and the public" and cannot "adapt to the usual stresses encountered in the workplace." (Tr. 1016.) Yet the ALJ noted that Bentura-Jimenez's mental status exam of plaintiff yielded

Page 4 – OPINION AND ORDER
*Eric S-S. v. SSA*, 3:24-cv-01394-AR

fairly mild findings. (Tr. 22.) During the exam, plaintiff's attitude was cooperative, with good eye contact and good interpersonal confidence; his thought processes were linear and goal directed, he had good insight, and unremarkable thought content. (Tr. 1013.) Although his affect was described as irritable and flat, his behavior before and after the examination was described as unremarkable. (Tr. 1010, 1013.) When he talked about his employment history to Bentura-Jimenez, plaintiff said that while he worked for a semester for a construction agency he "didn't get along with the laborers" but that he was "fine with the supervisors." (Tr. 1013.) Plaintiff also explained that he worked for his university for four years while attending college, and that his job ended because he was done with school. (Tr. 1013.)

Additionally, the ALJ found that Bentura-Jimenez's opinion was inconsistent with other mental status exams in the record, which showed largely normal results and a history of conservative treatment. (Tr. 22, citing Tr. 501, 544, 1016.) The record supports the ALJ's conclusions—plaintiff often had normal mental status exams, was often described as pleasant and cooperative, and regularly declined mental health referrals. (Tr. 503, 522, 524, 528, 544, 546, 596, 626, 654-55, 681, 696, 1544.)

Plaintiff argues that the ALJ failed entirely to address the supportability of Bentura-Jimenez's opinion. (Pl.'s Opening Br. at 6.) Although true that the ALJ's supportability analysis is set out with less-than-ideal clarity, because the ALJ's consideration of the supportability factor is "clear from context," the court concludes there is no error on this ground. *Jarrett v. O'Malley*, No. 23-3565, 2024 WL 4707890, at *2 (9th Cir. Nov. 7, 2024); *see also Woods*, 32 F.4th 785, 793 n.4 ("Although the ALJ's meaning here is clear from context, to avoid confusion in future cases,

ALJs should endeavor to use these two terms of art—'consistent' and 'supported'—with precision.")

Plaintiff further argues that the ALJ's consistency analysis is flawed, first because the ALJ did not "specify which treatment was considered conservative" and second because the ALJ failed to explain "how opinions on Plaintiff's abilities to interact with others and adapt to usual stresses in the workplace are contradicted by a history of conservative treatment." (Pl.'s Op. Br. at 6.) Yet plaintiff acknowledges that the ALJ's conclusions as to conservative treatment is discussed elsewhere in the decision. (*Id*.) That is, the decision identifies conservative treatment for plaintiff's mental impairments, citing his lack of mental health treatment, including no mental health counseling "since at least 2015" and "no treatment for depression or other mental impairments from 2017 through 2022." (Tr. 21, citing 544, 678, 683, 695-96, 1549-50.) Plaintiff argues that there is "evidence that Plaintiff attended mental health consultations in October of 2019 and was in counseling during his time in the military." (Pl.'s Op. Br. at 6, citing Tr. 543-546, 695.) Plaintiff is essentially asking the court to reweigh the medical evidence, but the court "may not reweigh the evidence and substitute our judgment for that of the ALJ's where the ALJ's decision is supported by substantial evidence." *Schmitz v. Saul*, No. 20-35723, 2021 WL 2029187 (9th Cir. May 21, 2021) (citing *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)).

Even so, plaintiff's record citations do not detract from the ALJ's ultimate conclusions. Plaintiff attended a mental health consultation in 2019 to address complaints of chronic pain and said that he "overdoes things due to ignoring his symptoms causing more injury" but that he was functioning well. (Tr. 543, 544.) The mental health consultant noted that plaintiff declined additional mental health counseling or treatment, concluding that plaintiff would benefit from

"some brief treatment for chronic pain with an emphasis on mindfulness/acceptance." (Tr. 543.)

Although a single chart note states that plaintiff received counseling while in the military, that same chart note comments that plaintiff has received no treatment for any mental health conditions since 2017, and also states that plaintiff is not interested in any reengagement with mental health treatment. (Tr. 695, 696.)

In sum, the ALJ's conclusions as to the supportability and consistency of Bentura-Jimenez's opinion are supported by substantial evidence and will thus remain undisturbed by the court.

### 2.    Sarah Borquist

Borquist completed a physical functional capacity questionnaire in support of plaintiff's disability benefits application. (Tr. 1237-43.) The ALJ was unpersuaded by Borquist's opinion, noting that it was often vague, unsupported by her treatment notes or objective findings, and inconsistent with treatment records showing normal objective findings and conservative treatment. (Tr. 22-23.) The ALJ's conclusions are reasonable and supported by substantial evidence.

Borquist opined extreme limitations in plaintiff's ability to work but fails to provide any explanation or support for her opinion. When asked to "characterize [plaintiff's] experience with stamina and/or fatigue" on a scale of one to ten, Borquist marked four but without context or explanation for that rating; nor is the fatigue rating described in a way that an ALJ could translate into a functional limitation. (Tr. 1238.) Borquist wrote that plaintiff would be able to stand and walk for a maximum of "about two hours" and sit for a maximum of "about two hours" but noted elsewhere on the form that plaintiff could only sit for 30 minutes and stand for 30 minutes before

changing position. (Tr. 1239.) She also stated that plaintiff would need to walk around for 10 minutes every 30 minutes. (Tr. 1240.) She wrote that plaintiff's ability to reach, handle, push, and pull were affected by his impairments, but failed to explain in any way how these abilities were affected and to what degree. (Tr. 1240-41.) She indicated that plaintiff could occasionally lift 10 pounds, could rarely lift 30 pounds, and never lift 50 pounds, citing "pain" and "torn labrum and lumbar disc pathology" as the reasons for this limitation. (Tr 1241.) But even Borquist's own records do not support these limitations, as plaintiff saw regular improvements with physical therapy and reported doing yardwork. (Tr. 963-67.) Nor are the limitations assessed by Borquist consistent with the overall record, which shows that plaintiff maintained an active lifestyle with conservative treatment and fairly normal objective examination results. (Tr. 809, 889-90, 895, 1324, 1344.)

   **3.    Sarah Macember**

   Macember, in a statement on plaintiff's physical capacity that supported his VA disability petition, wrote that plaintiff's "plantar fasciitis, [left] hip pain, and lumbar pain" were related to service-connected conditions that ultimately led to his VA medical retirement decision. (Tr. 217.) The ALJ did not address Macember's statement, other than noting that the regulations do not require an ALJ to provide an analysis of disability decisions by another governmental agency. (Tr. 23.) The court agrees that the ALJ is not required to address Macember's opinion. *See* 20 § C.F.R. 404.1507 (stating that an ALJ will not provide any analysis in their disability decision about a decision made by any other governmental agency including decision made by the VA). And as the Commissioner points out, Macember's statement does not meet the SSA regulation's requirements for a medical opinion. A medical opinion is defined as "a statement from a medial

source about what you can still do despite your impairments." 20 C.F.R. § 404.1513(a)(2).
Macember's statement neither offers guidance as to what plaintiff can still do despite his
impairments nor provides any functional limitations that the ALJ could translate into RFC
restrictions. Thus, the ALJ did not err in failing to provide an analysis of Macember's statement.

**B.     *Subjective Symptom Testimony***

Plaintiff argues that the ALJ failed to give specific, clear and convincing reasons for
disregarding his subjective symptom testimony. (Pl. Br. at 15-21.) Determining the credibility of
a claimant's symptom testimony requires from the ALJ two steps. *Trevizo v. Berryhill*, 871 F.3d
664, 678 (9th Cir. 2017); 20 C.F.R. § 404.1529. At the first step, the claimant must produce
objective medical evidence of an underlying impairment that could reasonably be expected to
produce the alleged symptoms. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th
Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second step, if there
is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing
reasons for discounting the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89
(9th Cir. 2015); 20 C.F.R. § 404.1529. The specific, clear and convincing standard is "the most
demanding required in Social Security cases" and is "not an easy requirement to meet."
*Garrison,* 759 F.3d at 1015*; Trevizo,* 871 F.3d at 678-79. The "clear and convincing" standard
requires an ALJ to "show [their] work" but, ultimately, the question is not whether ALJ's
rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the
power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Here plaintiff argues that the ALJ improperly relied on cherry-picked medical records
showing fairly normal results and improperly relied solely on objective records in discounting

his testimony. (Pl. Br. at 19-20.) Plaintiff also contends that the ALJ's conclusions that plaintiff received conservative treatment lack substantial evidence. (Pl. Br. at 20-21.) The court disagrees.

The ALJ properly discounted plaintiff's testimony about the limiting effects of his mental and physical impairments. As the ALJ noted, objective findings upon examination were often normal and were inconsistent with plaintiff's symptom allegations. The ALJ noted that x-rays of plaintiff's lumbar spine showed normal results with minimal levoscoliosis, which is inconsistent with plaintiff's claims of debilitating pain. (Tr. 20, citing Tr. 487, 498.) Plaintiff also had inconsistent reports of altered gait and reduced joint functionality. (Tr. 20-21, citing Tr. 395, 414, 429, 457, 471, 522, 528, 532, 538, 621, 768, 891, 895.) The citations provided by the ALJ are substantial evidence that the objective medical findings are inconsistent with the severity of plaintiff's symptom allegations.

As to plaintiff's mental impairments, the ALJ's conclusions that he received conservative treatment and examination findings were mild are similarly supported by substantial evidence. In 2022, plaintiff's primary care doctor noted that he alleged "100% [disability] for PTSD, depression" but had received no treatment for any such condition since 2017. (Tr. 696.) His doctor at that check-in noted plaintiff was not interested in reengaging with mental services. (Tr. 696.) At a medical consultation in September 2023, plaintiff was described as having no indication of significant depression and no indication of a current mood disorder or adjustment disorder. (Tr. 1549-50.) Plaintiff continued to deny taking prescribed psychotropic medications and offers of counseling and mental health care, noting his mother is a psychologist, which makes him "well informed." (Tr. 544, 546.) During a consultative examination, he reported no psychological impairments to his ability to perform his activities of daily living. (Tr. 682-83.)

Plaintiff's mental status examinations were fairly normal, including normal memory and thought processes and normal mood and affect. (Tr. 501, 522, 544, 1517.)

Considering plaintiff's limited and conservative treatment, as well as the objective evidence in the record, the ALJ's reasonably could conclude that plaintiff was not as limited as alleged and discount his testimony on that basis. And the ALJ's reasoning for those conclusions are sufficiently specific, clear and convincing.

In summary, the ALJ's conclusion as to the medical opinions and plaintiff's symptom testimony are based on substantial evidence and supported by reasonable references drawn from the record. The ALJ did not err.

## CONCLUSION

For the above reasons, Commissioner's decision is AFFIRMED.

DATED: April 30, 2025.

_____ /s/ Jeff Armistead
JEFF ARMISTEAD
United States Magistrate Judge

Page 11 – OPINION AND ORDER
*Eric S-S. v. SSA*, 3:24-cv-01394-AR